IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRIAN ALAN MISQUEZ,<br><br>    Petitioner,<br><br>  v.<br><br>KEN CLARK, Warden,<br><br>    Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. C 07-4981 JSW (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY** |

## INTRODUCTION

Petitioner, a prisoner of the State of California currently incarcerated at California Substance Abuse Treatment Facility in Corcoran, California, has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. This Court ordered Respondent to show cause why a writ should not be granted. Respondent filed an answer, memorandum and exhibits in support thereof. For the reasons stated below, the petition is denied.

## PROCEDURAL BACKGROUND

On October 29, 2004, a jury in Contra Costa County Superior Court found Petitioner guilty of second-degree murder with a knife enhancement. Petitioner was sentenced to 15 years-to-life in state prison. Petitioner appealed his conviction to the California Court of Appeal, and his conviction was affirmed on July 7, 2006. Petitioner also filed a petition for review in the Supreme Court of California, which was denied on October 11, 2006. Petitioner filed the instant petition on September 26, 2007.

## FACTUAL BACKGROUND

The facts underlying the charged offenses, as found by the California Court of Appeal, are summarized in relevant part, as follows:

> Twenty-two-year-old Rogelio de Chavez lived with his sister in an apartment complex in El Cerrito. Upon returning home from work the evening of July 6, 2001, Rogelio's sister found Rogelio's body in a pool of blood in the living room with multiple stab wounds across his partially naked body. Expert testimony established that Rogelio had been stabbed 26 times in his torso, neck and head. Blood was smeared on the apartment door and walls, the living room sofa, and on the handle of one of the knives in the kitchen.
>
> An investigation revealed that Rogelio had established an internet profile, "De La Salle Boy 97," identifying himself as a 22-year-old Filipino man. On the hard drive of his computer the police found a record of an internet conversation just after midnight on July 6 between "De La Salle Boy 97" and another online profile, "Pimp Ass Bling Bling B," that belonged to defendant. The exchange concerned a prospective sexual encounter, and at 2:11 a.m., "Pimp Ass Bling Bling B" downloaded a photograph of Rogelio.
>
> Defendant testified and acknowledged that he had been at Rogelio's apartment on July 6, and admitted the stabbings. Previously, defendant had informed police that Rogelio had attempted to assault him and that a third person was present and came to his aid. During trial he provided a very different rendition of the events inside Rogelio's apartment, insisting that Rogelio was a predatory homosexual who threatened to rape him.
>
> Defendant resided in Antioch with his girlfriend, Jennifer, and their two infant children. On July 6, Jennifer called defendant at work but did not reach him. Defendant telephoned Jennifer later that day, saying that he did not feel well and needed a ride home. Although defendant left for work that morning in his uniform, he arrived home in non-uniform attire. Jennifer testified that on the evening of July 6, defendant suggested for the first time that they move to Oregon. They began packing that night and took a bus to Oregon two days later, leaving their computer and other belongings at the home of defendant's father. Other friends and relatives of defendant testified to the sudden nature of the Oregon trip. Defendant's father, however, testified that defendant had informed him of his Oregon plans nearly a week before July 6, 2001.
>
> Defendant was charged with murder (Pen.Code, § 187, subd. (a)), and with the further allegation that he personally used a knife in

> the commission of the offense (§ 12022, subd. (b)(1)). The jury found defendant guilty of murder in the second degree and found true the allegation that he had used a knife. The court sentenced defendant to prison for 15 years to life, plus one year for the knife enhancement. Defendant has timely appealed.

*People v. Misquez*, No. A108850, 2006 WL 1875894 (Cal. Ct. App. July. 7, 2006), at *1 (footnotes omitted).

## **STANDARD OF REVIEW**

This Court may entertain a Petition for a Writ of Habeas Corpus "on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000).

Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 413. As summarized by the Ninth Circuit: "A state court's decision can involve an 'unreasonable application' of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails

3

to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000) (citing *Williams*, 529 U.S. at 405-07), *overruled in part on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

In deciding whether the state court's decision is contrary to, or an unreasonable application of clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v. Thompson,* 217 F.3d 663, 669 n.7 (9th Cir. 2000). If the state court only considered state law, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law. *Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001); *see, e.g., Hernandez v. Small*, 282 F.3d 1132, 1141 (9th Cir. 2002) (state court applied correct controlling authority when it relied on a state court case that quoted the Supreme Court for a proposition that was squarely in accord with controlling authority). If the state court, relying on state law, correctly identified the governing federal legal rules, the federal court must ask whether the state court applied them unreasonably to the facts. *Lockhart*, 250 F.3d at 1232.

4

# DISCUSSION

## I. Juror Disqualification

Petitioner claims that he was deprived of his Sixth Amendment right to trial by a fair and impartial jury and due process of the law because the trial court denied his challenge for cause to a juror who he claims slept during portions of the trial. Petitioner further argues that his constitutional rights were violated due to the juror's bias after the juror disclosed the murder of his grand-nephew during the course of his service during Petitioner's trial. Petitioner is not entitled to federal habeas relief on these claims.

### A. Legal Standard

The Sixth Amendment grants criminal defendants the right to a trial by an impartial jury from the state and district in which the defendant allegedly committed the crime. U.S. Const. Amend. VI. Criminal defendants' right to a jury trial is defined by the right to a fair and impartial jury "capable and willing to decide the case solely on the evidence before it" under the watch of a trial judge "to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

Juror misconduct in the form of incompetency brought on by inattentive jurors, or jurors who are, due to intrinsic factors, unable to competently perform their duties on the jury must meet a high standard before inquiry and mistrial can be considered. *See e.g. Tanner v. U.S.*, 483 U.S. 107, 125-127 (1987) (disallowing post-verdict juror testimony to show evidence of juror misconduct when jurors were allegedly intoxicated, selling and distributing narcotics and sleeping during the course of the trial because of a lack of a strong showing of incompetency by the jury).

The possibility of jurors finding themselves in potentially compromising positions in the course of trial does not necessarily warrant a new trial, as such occurrences would make few trials constitutionally acceptable. *Smith*, 455 U.S. at

5

217. When situations arise in which jurors are potentially prejudiced by outside factors, the court is obligated to conduct a hearing with the defendant present in order to determine the circumstances surrounding the occurrence and whether or not there has been a detrimental effect on the defendant's right to a fair and impartial jury. *Id.* at 209; *Remmer v. U.S.*, 347 U.S. 227, 229-30 (1954) (holding that in situations where a juror has been potentially prejudiced by outside factors government has burden to prove that the suspicious contact is harmless after giving notice to and conducting a hearing with the defendant). Although the determinations made in these hearings often turn on the responses given by the jurors, the juror's remarks should not simply be deemed unreliable and dishonest testimony by the court, given that deference ought to be given to the fact than an honest man under the sanctity of oath is "well qualified to say whether he has an unbiased mind in a certain matter." *Dennis v. U.S.*, 339 U.S. 162, 171 (1950).

Furthermore, deference must be given to factual findings made by the state court on issues of fact, unless Petitioner rebuts the presumption of correctness with clear and convincing evidence as defined in 28 U.S.C. §2254(e)(1). Petitioner must present clear and convincing evidence contravening the state court's factual findings, conclusory assertions will not suffice. *Taylor v. Maddox*, 366 F.3d 992, 1000 (1994). Such deference is also given to factual findings made with respect to jury impartiality, and findings of jury impartiality are presumed correct under §2254(e)(1) and are regarded as findings of "historical fact" and not findings of "mixed law and fact" which would require de novo review by the district court. *Patton v. Yount*, 467 U.S. 1025, 1036-37 (1984); *Wainwright v. Witt*, 469 U.S. 412, 429 (1985).

**B.    Analysis**

Petitioner claims that his Sixth Amendment right to a fair and impartial jury and his right to due process of the law were violated by a juror's inattention during portions of his trial. Petitioner contends the juror was "sleeping" or "dozing"

6

during the trial. The trial judge, defense counsel, and prosecutor discussed the issue of Juror 159's attentiveness at various points during Petitioner's trial, but there was never a determination that the juror was actually sleeping. Respondent's Exhibit B, Reporter's Transcript (hereinafter "RT") at 661, 906, 1124-25.

Petitioner further alleges that this same juror was biased because his grand-nephew was murdered during the course of Petitioner's trial. Petitioner argues that the trial court, in denying his motion to excuse the juror for cause, deprived him of his constitutional right to a fair trial by a competent and impartial jury.

**1.     Jury Misconduct and Juror's Inattention**

Petitioner alleges that the juror in question had fallen asleep during portions of his trial. However, according to factual findings made by the trial court, the juror was not actually sleeping. The findings made by the state trial court are summarized below:

> On the eighth day of trial, the court interrupted the cross-examination of a witness to ask Juror No. 159 whether he was paying attention, since he appeared to be dozing. The juror replied that he was listening. Outside the presence of the jury on day ten, the court remarked that Juror No. 159 was having trouble staying awake, but both the court and defense counsel indicated they thought the juror was paying attention. The next day the victim's family reported that they believed Juror No. 159 was sleeping the day before and during both the morning and afternoon sessions on day eleven. The judge remarked that he had been carefully watching Juror No. 159 and that he seemed to be following the proceedings despite occasional drowsiness. The following morning the judge told the jury that he had observed some jurors appearing tired and admonished them to pay attention....defense counsel requested that the juror be discharged, also noting that the juror appeared to be sleeping during her closing argument. The trial judge assured her that he was observing Juror. No. 159 and that he had not been sleeping. The court denied the motion to discharge the juror, and later denied a motion for a new trial based in part on the ground that the juror should have been dismissed for sleeping.

*Misquez*, 2006 WL 1875894 at *2 (footnotes omitted).

Whether or not Juror No. 159 slept during material portions of the proceedings is a factual issue determined by the trial court, and such factual

determinations are governed by §2254(e)(1) and presumed to be correct, absent clear and convincing proof to the contrary. Petitioner does not provide any evidence that the juror was in fact sleeping during portions of Petitioner's trial which meets the clear and convincing evidence standard to controvert the trial court's factual finding. Absent such evidence, the trial court's determination that the juror was not sleeping is presumed correct.

Furthermore, Petitioner's right to a fair and impartial jury trial by a jury that is "willing and competent" to decide his case was properly determined by the trial court. *Smith*, 455 U.S. at 217. The trial judge was aware of the concern surrounding Juror No. 159's attentiveness, and addressed this issue by paying special attention to Juror No. 159 during the trial. RT at 2413. The trial court found no indication that he was dozing, and in fact took notice that although the juror was less responsive than the other members of the jury, he still turned the pages of the transcript at relevant times during the course of the trial which indicated that he was paying attention to the proceedings. RT at 906. The appellate court concurred with this finding, holding that there was no reason to find error with the trial court's reasoning as the record contained "no convincing proof that he actually fell asleep." *Id.*

Petitioner further argues that the juror needed a "heightened sense of awareness" in order to fully understand his defense of imperfect self-defense. However, the Court of Appeal found no indication in the record that the juror was not attentive and fully capable of understanding defense arguments or not participating in the jury deliberations concerning the issue of imperfect self defense. *Id.*

In *Tanner*, the court held that juror testimony concerning jury members who were intoxicated, slept during portions of the trial, and allegedly sold and used

narcotics during the duration of the trial was not admissible in a separate evidentiary hearing under Federal Rule of Evidence 606(b), and that in choosing not to hold such an evidentiary hearing the trial court did not violate the defendant's Sixth Amendment right to a fair and competent jury. *Tanner*, 483 U.S. at 126. In its reasoning, the Supreme Court found that the level of alleged incapacity of the jury in *Tanner* was not sufficiently high to warrant admission of jury testimony in a separate evidentiary hearing, and that safeguards were already in place that protected a defendant's Sixth Amendment right to a fair and competent jury such as the fact that jurors are observable by the court during trial and misconduct can be easily brought to the court's attention. *Id.* The evidence of alleged juror misconduct in *Tanner* was more egregious than in the instant case, however the *Tanner* court still deemed the jury's behavior short of incompetency. *Id.* at 125. Under the reasoning of *Tanner,* Juror No. 159's alleged misconduct here would not be considered incompetent under the Sixth Amendment. Additionally, the appropriate trial safeguards to protect an individual's Sixth Amendment rights referenced in *Tanner* were in place here, since Juror No. 159's actions were fully observable and readily brought to the court's attention. RT 2413.

Petitioner has not presented any new evidence that the juror in question was in fact sleeping or being inattentive and absent such "clear and convincing evidence," the findings made in the state court level concerning the juror's ability to serve is presumed correct. 28 U.S.C. §2254(e)(1). Petitioner is not entitled to federal habeas relief on this claim because the state court's findings that Petitioner's rights were not violated was not an "unreasonable application" or "contrary to" clearly established federal law as defined by the Supreme Court. *William*, 529 U.S. at 402-04, 409.

### 2. **Juror Misconduct and Bias**

Petitioner also alleges bias on the part of Juror No. 159 due to the murder of his grand nephew during the course of Petitioner's trial. The trial court was fully informed of the murder during the trial. The appellate court affirmed the trial court's decision, finding that the court did not abuse its discretion in determining that the juror was fit to serve:

> [D]uring closing argument, Juror No. 159 disclosed to the court that his grand-nephew had been murdered six days before and inquired about his ability to attend the funeral. The court and counsel then retired to chambers and questioned the juror as to his ability to continue serving as an impartial juror, and the juror assured the court that he could do so....
>
> Here, the court did exactly what it should have done upon learning of the nature of the nephew's death. The court brought the juror into chambers with counsel and inquired whether he believed he was capable of continuing with the trial. He responded, "Yes, I do." The court asked, "So are you still going to be able to keep your mind on this case and not be overcome by the needs that you have for the funeral or to help the people there?" Juror No. 159 replied, "I think-I know I can do the job here." The attorneys were given an opportunity to question the juror. Defense counsel asked whether the murder would encroach upon the trial, whether the juror would equate his grand-nephew's killing with the killing involved in the trial, and whether the juror could continue to pay attention. The juror answered the first two questions in the negative and replied affirmatively to the third. The trial court again asked the juror if he would be able to devote his full attention to the case and he replied that he would. When the questioning was completed, the court indicated it was satisfied with the juror's ability to continue serving fairly.

*Misquez*, 2006 WL 1875894 at *2-3.

The state court's treatment of the juror's potential prejudice did not violate Petitioner's constitutional rights. Federal law has acknowledged that there are many instances in which jurors might become prejudiced due to a variety of factors, and such prejudicial occurrences do not necessarily void the outcome of a trial if the trial court has taken remedial steps to ensure the fairness of the trial through a hearing involving both parties. *Smith*, 455 U.S. at 217; *Remmer*, 347

U.S. at 229-30.  There is no error in the trial court's handling of Juror No. 159's fitness to serve, where the court conducted a hearing in chambers and questioned the juror in front of counsel regarding his continued ability to serve on the jury. Respondent's Exhibit B, RT at 2405-14.  Juror 159 advised the Court that his grand nephew's murder would not bias him against Petitioner.  RT at 2419.  There is also no basis to dismiss Juror No. 159's assurances of impartiality during the in camera hearing as unreliable without further evidence to the contrary.  *Dennis*, 339 U.S. at 171.  Defense counsel participated in the proceedings, questioning the juror about his possible bias.  *Misquez*, 2006 WL 1875894 at *2; RT at 2410-11.  The trial court took the necessary precautions to ensure the impartiality and fairness of the trial by questioning the juror about his capabilities in the presence of counsel, and in so doing did not unreasonably apply or contravene federal law as determined by the Supreme Court.

The determination by the trial court that the juror in question was capable of serving as a competent juror is a matter of fact, not a matter of law.  *Patton*, 467 U.S. at 1036-37.  Thus, the trial court's determination, after questioning that involved defense counsel, is presumed correct under the 28 U.S.C. §2254(e)(1). Petitioner has not provided any clear or convincing evidence to rebut the presumption of correctness.  Petitioner's conclusory assertions that the juror was biased is not enough to overcome the presumption of correctness of the state court's decision.  Since the trial court's determination is presumed correct and Petitioner does not present clear and convincing evidence in order to overcome that presumption, the trial court did not unreasonably apply or contravene federal law as defined by the Supreme Court in finding that the juror was capable of serving on the jury.  For the aforementioned reasons, the Petitioner is not entitled to federal habeas relief on this claim.

**CERTIFICATE OF APPEALABILITY**

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009). A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability (formerly known as a certificate of probable cause to appeal). See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate must indicate which issues satisfy this standard. See id. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000). For the reasons set out in the discussion of the merits, above, jurists of reason would not find the result debatable. A certificate of appealability will be denied.

**CONCLUSION**

After a careful review of the record and pertinent law, the petition for writ of habeas corpus is denied. The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: August 30, 2010

_____
JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

BRIAN ALAN MISQUEZ,

          Plaintiff,

  v.

KEN CLARK et al,

          Defendant.

Case Number: CV07-04981 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 30, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Brian A. Misquez
V57216
CSATF
P.O.Box 5246
Corcoran, CA 93212

Dated: August 30, 2010

*Jennifer Ottolini*
Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk